## 20819. IVEY v. THE STATE.

Decided December 18, 1930.

*John M. Greer, John B. Guerry,* for plaintiff in error.
*Hollis Fort, solicitor-general, Jule Felton,* contra.

LUKE, J. Henry Ivey was found guilty of voluntary manslaughter, under an indictment charging him with murdering Willie B. Bowen by shooting him with a pistol on January 12, 1930, in Macon county, Ga. The defendant excepts to the judgment overruling his motion for a new trial.

The general complexion of the case is this: On January 12, 1930, Henry Ivey, Willie Bowen, and several other negroes were engaged in a game of "skin." The house in which they were playing was small and was lighted by a single lamp. The night was dark, and the hour was shortly after midnight. Ivey and Bowen made a bet, the latter lost, and there was a difference as to whether or not Ivey gave Bowen the proper change. Ivey put 20 cents down on the table, saying that was all he had, and walked out of the house, closely followed by Bowen. Two pistol shots rang out, and Bowen fell on the steps leading directly from the door of the house to the ground, having been shot twice, once in the body and once in the leg. His body was found within four feet of the door out of which the parties came. Before dying as a result of the wounds, he made a dying declaration in which he made out a case of unprovoked murder. For the purpose of this decision we deem it unnecessary to state the testimony of all the witnesses, or to set out fully the testimony of those witnesses mentioned. We shall, however, give some of the testimony pertaining to the most im-

portant contention of the plaintiff in error, to wit, that the homicide was either murder or justifiable homicide, and that there was no manslaughter in the case.

Milos Jones, referring to Willie B. Bowen as "B," and to the defendant as "Henry," testified for the defendant in part as follows: "I was present. . . B. claimed Henry didn't give him his change out of the dollar, and they got up a squabble about the forty cents. . . He gave him his forty cents, and while he was counting his money he said, "Henry, give me my forty cents, or I'll kill hell out of you." Henry said, "I done give you forty cents." He said, "No, you aint, and if you don't I'll kill hell out of you," and he had his hands back like that. I don't know what he was doing. Henry says, "Here's twenty cents, all I got;" and B. says, "I don't want it". . . Just about time Henry got to the door B. spoke and says, "Henry, give me forty cents, or I'll kill hell out of you;" and B. went out of the door with his hands in his hip-pocket like that. By the time he got to the second step the pistol fired. B. followed Henry out of the door. They were pretty close together." Man Bearden, sworn for the defendant, testified that just prior to the killing the deceased had his pistol in his pocket and said he would kill the defendant, and that just about the time the deceased said, "Damn you, give me twenty cents," the pistol fired. Lester Harris, sworn for the defendant, testified that just as the deceased reached the door he pulled a pistol out of his belt, and the shooting took place immediately. Toodlum Robinson, sworn for the defendant, testified in part: "I was present the night that Willie B. Bowen was killed. . . Willie B. had a pistol first part of the night. I was present at the time the difficulty arose. . . I heard Willie B. tell Henry that he was bad, and he would kill him before he bat his eye if he fell; that he was a son of a bitch."

The defendant's statement in full is as follows: "Me and Willie B. Bowen had a sixty-cent bet, thirty cents apiece. I owed him forty cents out of the dollar and gave him forty cents, and he want satisfied. He told me that if I didn't give him forty cents that he would shoot hell out of me. I gave him twenty cents more and walked out of the door; and he came down the steps behind me with his hands on his hip-pocket, and I shot him once, and he kept walking and I shot him again."

1. Under the record in this case we are satisfied that there is evidence to support the verdict of voluntary manslaughter, and that the trial judge did not err in overruling the general grounds of the motion for a new trial.

2. It appears from the first special ground, numbered 4, that after the court permitted a named witness to testify generally "that the character of the deceased for turbulence and violence was bad," he refused to allow this witness to testify, in reply to a question propounded by defendant's counsel, "that he was shot by the deceased in the last two years." It appears also from this ground that counsel proposed to show also "that the deceased shot Ned Rumph within the last two years;" . . "that he shot Lucius Felton;" that "he shot at Bud Smith;" that "he pointed his pistol at Oscar Johnson;" that "he drew his pistol on Buck Johnson;" that "he pointed his pistol at Adel McKenzie;" that "he cut Henry Simmons;" and "that he had personal difficulties with a half a dozen more." It is contended that the defendant knew of said occurrences, and that they illustrated the "character, motive, and general conduct of the deceased;" also that they tended to show "whether the defendant acted under the fears of a reasonable man, and whether or not there was actual danger, when this deceased, Willie B. Bowen, told the defendant he would kill him, and started out of the door after him."

Under the rule laid down in the case of *Powell* v. *State,* 101 *Ga.* 9 (29 S. E. 309, 65 Am. St. R. 277), we are satisfied that the foregoing ruling of the trial judge was correct. The first headnote in that case is: "Evidence offered in a trial for murder to show the character of the deceased for violence will, as to the party making the attack, be confined to the reputation which the deceased bore in the community, and will not extend to specific acts." In this connection see also *Hawkins* v. *State,* 141 *Ga.* 212 (5) (80 S. E. 711). It will be observed that no specific instance of violence which it was sought to prove was in any way connected with the homicide under investigation.

3. Even if it be conceded that the testimony of the witness Jim Taylor in regard to automobile tracks found at the scene of the killing the morning after it occurred was irrelevant for the reason that such tracks were not shown to have been made by the defendant's car, still, under the facts in this case, such error would not be cause for a reversal.

4. The last special ground complains of a charge of the court wherein instructions were given upon the law of manslaughter. The contention is that the evidence for the State made out only a case of murder, while the defendant made out a clear case of justifiable homicide. The rule governing cases like this is stated in *Gunn* v. *State*, 23 *Ga. App.* 545 (99 S. E. 62): "It is well settled by repeated rulings of the Supreme Court and this court that on a trial for murder, if there is anything deducible from the evidence or the defendant's statement that would tend to show manslaughter, voluntary or involuntary, it is the duty of the court to instruct the jury fully on the law of manslaughter." See also numerous authorities cited in the *Gunn* case.

As has already been indicated in our discussion of the general grounds of the motion for a new trial, we are well satisfied that there is testimony in the case which, coupled with the defendant's statement, presents the theory of voluntary manslaughter.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*